**Ji Cai YU, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**

No. 03–3964.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 16, 2004.

Decided Dec. 28, 2004.

John Z. Huang, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, for Respondent.

Before RIPPLE, EVANS, and SYKES, Circuit Judges.

## ORDER

Ji Cai Yu, a 21–year–old Chinese native and citizen, claims to fear persecution based on imputed Falun Gong affiliation. He applied for asylum, withholding of removal, and relief under the Convention Against Torture, but the Immigration Judge ("IJ") denied relief, reasoning that Yu was not credible and thus did not demonstrate a well-founded fear of future persecution. The Board of Immigration Appeals ("BIA") summarily affirmed the IJ's opinion. Yu now petitions for review of that judgment; his petition is denied.

In 2001, Yu left China (Fujian Province) and arrived in the United States without proper entry documents. He was detained by the Immigration and Naturalization Services ("INS"), but then released pending his asylum hearing. Yu filed a pre-hearing statement, asserting that he had been persecuted on account of imputed membership in the Falun Gong and that he had a fear of future persecution. Although Yu was not a Falun Gong practitioner, he claimed that membership in Falun Gong—a spiritual movement reported by the Department of State as repressed in China—was imputed to him because his parents were members.

In a statement attached to his asylum application and in testimony at his removal hearing, Yu further detailed the circumstances of his Falun Gong contact and of his departure from China. According to Yu, his parents were peddlers who sold books and popsicles along the curbside. His parents "occasionally, not very often" sold Falun Gong books over the course of one year. Yu helped his parents display and sell their wares. Two or three times, when the Falun Gong materials were displayed at his parents' stall, officials came by and warned Yu's parents that, if they did not stop displaying the materials, the books would be seized, and the family would receive a "good beating." Yu's parents, however, continued to sell the books, and eventually they were reported to the government. Local officials went to their home to arrest Yu and his parents, but neighbors helped them to escape. When Yu returned home, the house was a

"mess." Officials had placed a seal on the front door marking the house as a crime scene, but Yu removed the seal, gathered some clothes and went to his grandmother's house, which was nearby.

Yu testified that, after leaving home, he stayed with his grandmother for almost 20 days. During that time, he returned to his neighborhood but was unable to find his parents. Neighbors informed him that officials were still looking for his parents, even contacting his relatives concerning his whereabouts. According to Yu, his grandmother was "afraid that the government would come back again for me" so she paid some $20,000 to "snakeheads" in Fujian to smuggle him out of the country. When the IJ expressed skepticism that Yu's grandmother would have such a large sum of money available to smuggle him out of the country, Yu testified that she had saved the $20,000 from remittances by relatives living in the United States. Later that month, Yu was smuggled to Vietnam, en route to the United States. Since Yu's arrival in the United States, his parents had telephoned him, but they did not say where they were living, and Yu surmised that they were moving around frequently.

In response to questions about why he fears incarceration if he returns to China, Yu testified that he had neighbors who had received sentences of three to five years as punishment for selling Falun Gong materials. He also asserted that his grandmother told him not to return to China because "all" of the Falun Gong adherents in their neighborhood were arrested and fined, and some were put in prison. Although Yu testified that he was not a member of Falun Gong, he insisted that his parents' distribution of materials rendered him a target. Also, he asserted that it was not safe for him to relocate to another city in China because government repression of Falun Gong is countrywide.

The IJ denied relief. The IJ found Yu not credible, reasoning that the factual circumstances surrounding Yu's departure from China were "just not plausible." In rendering his decision, the IJ acknowledged the State Department's reports that Falun Gong adherents are repressed in China. However, the IJ doubted that this repression affected Yu. First, the IJ found it "doubtful" that the government sought to persecute someone whose activities concerning the Falun Gong were so "limited." The IJ also found a number of aspects of Yu's testimony implausible: that Yu's family could so easily amass $20,000; that Yu was able to leave China so quickly; and that Yu had no information concerning his parents' whereabouts. The IJ suspected that Yu's fears were "exaggerated," and that Yu had "another agenda, namely an economic one." The IJ decided that Yu's case did not "really hold much substance." After reaching this adverse credibility determination, the IJ denied Yu's petition for asylum and withholding of removal, along with his claims under the Convention Against Torture. The BIA summarily affirmed the IJ's opinion.

If the BIA adopts the decision of the IJ, as it did here, the IJ's decision becomes the final decision for the agency, and that decision will be affirmed if it is supported by substantial evidence. *Tolosa v. Ashcroft*, 384 F.3d 906, 908 (7th Cir.2004). A petitioner requesting asylum based on a fear of future persecution must establish with credible and specific evidence that his fear is well-founded. *Liu v. Ashcroft*, 380 F.3d 307, 313 (7th Cir.2004).

We give great deference to an IJ's credibility determination. *Tolosa*, 384 F.3d at 909. If an IJ's decision is based on substantial evidence in the record and is supported by cogent reasons bearing a legitimate nexus to the finding, it will be overturned only in extraordinary circum-

stances. *Id.* (citing *Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir.2003)). We reverse only if the evidence would compel a reasonable fact finder to reach a contrary result. *Krouchevski*, 344 F.3d at 673.

Yu contests the IJ's credibility finding with three arguments. He first contends that the IJ impermissibly "stressed the amount of money that Yu claims it took ... to come to the U.S." in finding him incredible. Yu develops his argument by explaining that the IJ found him incredible because of a discrepancy between the amount he stated that he paid to be smuggled to the United States ($20,000) and a Canadian government report stating that the average cost of smuggling through Fujian snakeheads was $33,000. Yu then suggests explanations for the cost differential, hypothesizing that Yu's family may have had ties to the snakeheads or that Yu was mistaken about the exact amount paid by his grandmother. Yu charges the IJ with overstating the significance of a discrepancy that was both minor and peripheral to his asylum claim, and with not giving him an opportunity to explain the difference.

This argument misapprehends the basis of the IJ's decision. Although the IJ did refer in footnote three of his order to a statement of the Canadian Refugee Board about average smuggling costs paid to snakeheads, a fair rendering of the IJ's order does not suggest that the IJ discredited Yu based on the discrepancy in cost between the Canadian Report and his own testimony. Rather, the IJ found Yu incredible because the IJ doubted that Yu's family, considering their "circumstances ... they were popsicle sellers," would be able to quickly amass $20,000. Because Yu's argument is based on a mischaracterization of the IJ's decision, it is without merit.

Yu next asserts, that in finding him incredible, the IJ "improperly placed emphasis on the fact that Yu is not a member of Falun Gong." He contends that even nonmembers are subject to persecution in China and cites various U.S. government reports to support this assertion. There is no doubt that persons affiliated with Falun Gong may be subject to harassment or even persecution in China; there is even a recent case in this circuit where a nonpractitioner of Falun Gong was arrested, detained and physically mistreated for selling Falun Gong materials. *See Liu v. Ashcroft*, 380 F.3d 307, 309 (7th Cir.2004). However, Yu's argument again misconceives the basis of the IJ's decision. The IJ's reasons for discrediting Yu went beyond Yu's non-affiliation with Falun Gong. The IJ found Yu's fears, for instance, to be "exaggerated": "Given the limited nature of the respondent's activities, and given the circumstances described in his testimony, I do not think that the respondent's claim has an objective basis." R. at 39. The lack of a reasonable fear of future persecution is, of course, an independent basis for denying the petition for asylum. *See Ghebremedhin v. Ashcroft*, 385 F.3d 1116, 1118 (7th Cir.2004).

Finally, Yu seems to raise an undeveloped argument that the IJ improperly decided his case based on his lack of corroborative statements. Yu contends that "it is inappropriate to base an adverse credibility finding on the applicant's inability to obtain corroborating affidavits from relatives...." Again, Yu has misconstrued the IJ's reasoning. The IJ based his credibility determination not on Yu's lack of corroborative statements, but rather on the overall implausible nature of Yu's testimony. The IJ states, "What is implausible is his description of his departure and the circumstances, particularly the time frame of the departure and the manner in which

his aunt got the money, and the information or lack of it, concerning his parents, suggesting they are fugitives, without providing any real information about their whereabouts." R. at 40. Yu's third argument is also without merit.

The IJ adequately substantiated his ruling; he found Yu's overall story to be incredible and articulated reasons for doing so that are supported by evidence in the record. Yu's arguments on appeal—focused primarily on misapprehensions of the IJ's reasoning—do not convince us to overturn the IJ's credibility determination. Accordingly, we deny Yu's petition.

DENIED